54 P.3d 739 (2002)
STATE of Washington, Respondent,
v.
Warren G. JACKSON, Appellant.
No. 26503-6-II.
Court of Appeals of Washington, Division 2.
October 2, 2002.
*740 Sheri Lynn Arnold, Court Appointed, Tacoma, for Appellant.
Kathleen Proctor, Pierce County Dep. Pros. Atty, Tacoma, for Respondent.
MORGAN, J.
Warren Jackson appeals his conviction of assault in the first degree. He claims in part that the trial court violated the rules on authentication and hearsay by admitting a 911 tape. Disagreeing, we affirm.
Warren Jackson and Katreace Moore had a child together but were not living together. On evening of April 8, 2000, he went to her apartment and entered her bedroom, where he found another man. According to the State's witnesses at trial, he walked to the kitchen, grabbed a knife, and returned to the bedroom. A fight ensued, during which both men were stabbed. Jackson fled and was arrested later at a friend's apartment.
While the fight was in progress, Moore called 911 and excitedly asked for help. As is normal, 911 recorded her call.
Jackson was tried before a jury for first degree assault and first degree burglary. During the State's case in chief, it offered the 911 tape. To lay a "foundation," it called Moore and asked her the following questions:
Q: You called 911?
A: Yes.
Q: Have you had an opportunity ... to review the audio recording of your call to 911?
A: Is that the tape? Yeah.
Q: Do you remember making the call?
A: Yes.
Q: When you reviewed the recording were there any changes or deletions or anything that was done to the tape?
A: No.
Q: Was it an accurate tape of a call that you made?
A: Yes.[[1]]
When the State offered the tape, Jackson objected on two grounds: (1) failure to authenticate and (2) hearsay not within a hearsay *741 exception.[2] The trial court overruled, and the State played the tape for the jury.
The jury convicted Jackson of assault but acquitted him of burglary. The court sentenced Jackson to 342 months in prison. Jackson then filed this appeal.
The only significant issue on appeal is whether the trial court erred by admitting the 911 tape. We discuss authentication first and hearsay second.

Authentication
Subject to the exceptions in ER 902 and 904, none of which apply here, ER 901 provides that the proponent of tangible evidence (e.g., a writing, recording, photograph, weapon, or other touchable object) must authenticate it. It further provides that the proponent can do that by producing "evidence sufficient to support" two basic findings.[3] One, which the rule calls "identification," is that the item is what the proponent claims.[4] The other, which the rule calls "authentication," is that the item is "in substantially the same condition as when the crime was committed."[5]
In most circumstances, a proponent can meet these requirements in more than one way.[6] To authenticate the photograph of a crime or accident scene, for example, a proponent can call a witness (a) who has personal knowledge of the scene the photo depicts, (b) who has compared the photo to that scene, and (c) who states that the photo accurately portrays the scene.[7] Alternatively, the proponent can call the photographer (or someone else with equivalent knowledge) to describe the equipment that was used, where and how it was used, that it generally produces accurate pictures, that it produced the particular picture in question, and that such picture has not been altered since being developed.[8] In the first situation, evidence of an "eyewitness comparison" of the scene and the photo directly supports findings of identification and authentication. In the second situation, evidence that the equipment generally operates reliably supports an intermediate inference that the equipment operated reliably on the occasion in question and that the equipment produced the picture in question, and those inferences rationally support findings of identification and authentication. These methods are not exclusive, of course,[9] and under specific circumstances a proponent may authenticate in other ways also.
Just as a proponent can authenticate a photo by "eyewitness comparison," a proponent can authenticate a tape recording by "earwitness comparison"i.e., by calling a foundational witness to testify (a) that the witness has personal knowledge of the events recorded on the tape; (b) that the witness has listened to the tape and compared it with those events; (c) and that the tape accurately portrays those events.[10] If the tape records human voices, the foundational witness (or someone else with the requisite knowledge) usually must identify those voices. The witness' testimony provides the necessary "foundation" if it is sufficient to support findings *742 (1) that the tape is what it purports to be and (2) that the tape's condition at trial is substantially the same as its condition on whatever earlier date is relevant (usually the date on which the tape was recorded).
Though incomplete, Washington's caselaw is consistent with these concepts. In the 1956 case of State v. Williams,[11] and again in the 1975 case of State v. Smith,[12] the Washington Supreme Court held that a tape can be authenticated by showing (1) that the recording machine "was capable of taking testimony;" (2) that its operator "was competent to operate it"; (3) that the resulting recording is "authentic" and "correct"; (4) that the resulting recording has been preserved without changes, deletions, or additions; and (5) the identity of each relevant speaker.[13] As a later case makes clear, however, neither Williams nor Smith describes the only way to authenticate a tape.[14]
Cases from other jurisdictions directly support these concepts. In Wisconsin v. Curtis, for example, the Wisconsin Court of Appeals said:
Next, [the defendant] claims that the tapes ... were not properly authenticated.... In Carrasco [887 F.2d 794, 803 (7th Cir.1989)], [t]he Seventh Circuit held that tapes are properly identified and authenticated when a party to the recorded conversation identifies the defendant's voice and testifies that the tapes accurately depict the conversations.... We adopt the reasoning of Carrasco and apply it to this case.[[15]]
In King v. Alabama,[16] Alabama's Court of Criminal Appeals stated:
Mr. King also argues that the trial court erred by admitting ... the tape-recording from the answering machine without first laying a predicate according to Voudrie v. State, 387 So.2d 248 (Ala.Crim.App.1980) [which set up a test very similar to that in Washington's Williams and Smith cases].
The Voudrie seven-pronged test for admission of sound recordings was deemed no longer applicable in Jackson v. State, 594 So.2d 1289 (Ala.Crim.App.1991), so long as the accuracy and reliability of the sound recordings could be demonstrated by a witness. "All that is required is to show that the recordings are `reliable representation[s] of the subject sound.'" Barnett v. State, 639 So.2d 527, 529 (Ala. Crim.App.1993).[[17]]
In People v. Driscoll,[18] New York's Appellate Division said:
Next, defendant takes issue with the admission of the tape of the November 24, 1995 conversation since the original tape was distorted and had to be enhanced by making a second tape using a variable speed control recorder. In our view, Rice's testimony that the tape was a complete and accurate reproduction of the subject conversation, augmented with proof that the enhancement did not change the tape's content, provided the requisite foundation for its admission.[[19]]
*743 Based on the foregoing, we hold that in proper circumstances, a proponent can authenticate a tape recording with conversation on it by calling a witness who has personal knowledge of the original conversation and the contents of the tape; who testifies that the tape accurately portrays the original conversation; and who identifies each relevant voice heard on the tape.[20] This method is not exclusive, and a proponent may also use any other that produces evidence sufficient to support the basic findings of identification and authentication. This method was the one used here, and the trial court did not err by overruling Jackson's failure-to-authenticate objection.

Hearsay
The rules on authentication and hearsay serve different though related functions. The rule on authentication, ER 901, requires indicia of reliability tending to show that the evidence is as reliable at trial as at some earlier relevant time (usually the time at which the evidence was created or discovered). The rule on hearsay, ER 801, requires indicia of reliability tending to show that the evidence was reliable at the earlier relevant time. If a proponent offers tangible evidence that incorporates an out-of-court statement, and the proponent wants to use the out-of-court statement to prove the truth of the matter asserted,[21] the proponent must meet both rules.
Each hearsay exception is nothing more nor less than an indicator of reliability deemed adequate to satisfy the hearsay rule. One such exception, known as the excited utterance exception, provides that a statement will be admissible, even though it is hearsay, if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[22]
In this case, the tape itself shows beyond question that Moore was excited when she called 911; she sounds frantic, and two men can be heard fighting in the background.[23] The trial court ruled at trial that she was still excited when an officer arrived at the house. The tape was clearly an excited utterance; the State satisfied the hearsay rule as well as the authentication rule; and the trial court did not err by admitting the 911 tape.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: SEINFELD, and BRIDGEWATER, JJ.
NOTES
[1] Report of Proceedings (RP) 93-94.
[2] On appeal, Jackson also claims that the tape violated Washington's Privacy Act, chapter 9.73 RCW. That argument has no merit, so we will not discuss it further. See RCW 9.73.030(2).
[3] ER 901(a).
[4] ER 901(a); State v. Campbell, 103 Wash.2d 1, 21, 691 P.2d 929 (1984), cert. denied, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985).
[5] ER 901(a); Campbell, 103 Wash.2d at 21, 691 P.2d 929.
[6] See, e.g., ER 901(b).
[7] E.g., State v. Tatum, 58 Wash.2d 73, 75, 360 P.2d 754 (1961); State v. Newman, 4 Wash.App. 588, 593, 484 P.2d 473, review denied, 79 Wash.2d 1004 (1971); Hansel v. Ford Motor Co., 3 Wash.App. 151, 157, 473 P.2d 219 (1970). See also 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE: § 901.19, at 203-04 (4th ed.1999).
[8] United States v. Clayton, 643 F.2d 1071 (5th Cir.1981); Tatum, 58 Wash.2d at 75, 360 P.2d 754; Newman, 4 Wash.App. at 593, 484 P.2d 473. See also 5C KARL B. TEGLAND, supra §§ 901.20-21, at 204-05.
[9] Cf. ER 901(b) (stating some but not all ways in which a proponent may authenticate).
[10] E.g., Tatum, 58 Wash.2d at 75, 360 P.2d 754; State v. Lyskoski, 47 Wash.2d 102, 109-10, 287 P.2d 114 (1955); see also 5C KARL B. TEGLAND, supra § 901.19, at 203-04.
[11] 49 Wash.2d 354, 360, 301 P.2d 769 (1956).
[12] 85 Wash.2d 840, 847, 540 P.2d 424 (1975).
[13] Williams, 49 Wash.2d at 360, 301 P.2d 769 (quoting Steve M. Solomon, Jr., Inc. v. Edgar, 92 Ga.App. 207, 88 S.E.2d 167, 171 (1955)); see also Smith, 85 Wash.2d at 847, 540 P.2d 424 (quoting Williams, 49 Wash.2d at 360, 301 P.2d 769). We have combined Williams' fifth and sixth elements, which are different methods of showing that the tape is now in the same condition as it was earlier. We have omitted Williams' last elementthat the statements on the tape were made "freely and voluntarily," and "without any kind of duress"as relating to criminal procedure rather than authentication.
[14] State v. Robinson, 38 Wash.App. 871, 886, 691 P.2d 213 (1984), review denied, 103 Wash.2d 1015 (1985); cf. State v. Mahoney, 80 Wash. App. 495, 498, 909 P.2d 949 (1996) (evidence of speaker's identity "may be either direct or circumstantial"); ER 901(b) (listing specific ways to authenticate "[b]y way of illustration only, and not by way of limitation").
[15] Wisconsin v. Curtis, 218 Wis.2d 550, 582 N.W.2d 409, 410, review dismissed, 219 Wis.2d 926, 584 N.W.2d 125 (1998).
[16] 730 So.2d 261 (Ala.Crim.App.1998), cert. denied (1999).
[17] 730 So.2d at 264.
[18] 251 A.D.2d 759, 675 N.Y.S.2d 151 (1998).
[19] 675 N.Y.S.2d at 153. See also, Angleton v. Texas, 971 S.W.2d 65, 67-68 (Tex.Crim.App. 1998), and cases cited therein.
[20] See, e.g., ER 901(b)(4), (5), (6).
[21] ER 801(c).
[22] ER 803(a)(2).
[23] Because the tape is clearly an excited utterance, we need not consider whether it is also a present sense impression under ER 803(a)(1).